UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MEIR GROSSMAN,

           *Plaintiff*,

v.

BARCLAYS BANK DELAWARE,

           *Defendant*.

Civil Action No. 12-6238 (PGS) (LHG)

**MEMORANDUM**

**SHERIDAN, U.S.D.J.**

    This matter comes before the Court on Defendant Barclays Bank Delaware's ("Barclays" or "Defendant") Motion for Summary Judgment (ECF No. 15) pursuant to FED. R. CIV. P. 56. *Pro se* Plaintiff Meir Grossman ("Mr. Grossman" or "Plaintiff") alleges that Barclays reported inaccurate information concerning his credit file to the three credit reporting agencies in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* The Court held oral argument in this matter on February 13, 2014. For the reasons set forth herein, Defendant's Motion for Summary Judgment is granted.

**I.    BACKGROUND**

    In 2005, *pro se* Plaintiff Meir Grossman opened a credit card account, with an account number ending in 3615 (hereinafter, the "Account"), with Defendant Barclays Bank Delaware. (*See* Def.'s Statement of Material Facts at ¶ 1; *see also* Affidavit of Claudia Roark ("Roark Aff.") at ¶ 2). Mr. Grossman used the account pursuant to its terms until the fall of 2009, at which time his "payments for amounts owed on the Account became irregular." (Def.'s Statement of Material Facts at ¶ 2; Roark Aff. at ¶ 2). In late October 2009, Barclays sent a statement to Plaintiff indicating a

balance of $1,380.43 owed on the Account and that a minimum payment of $14.00 was due to Barclays no later than November 17, 2009. (*See* Roark Aff. at ¶ 2, Ex. A). Plaintiff failed to make any payment by the November 17, 2009 due date. (*See* Def.'s Statement of Material Facts at ¶ 2 *and see* Roark Aff. at ¶ 2). In late November 2009, Barclays sent a subsequent statement to Plaintiff indicating an increased balance of $1,855.65 owed on the Account, that an amount was past due on the Account, and that a minimum payment of $77.54 was due to Barclays no later than December 18, 2009. (*See* Roark Aff. at ¶ 2, Ex. A). Plaintiff again failed to make any payment by the December 18, 2009 due date. (*See* Def.'s Statement of Material Facts at ¶ 3 *and see* Roark Aff. at ¶ 2).

In December 2009, after having reached an agreement with Plaintiff, Barclays placed the Account into a hardship repayment program. (*See* Def.'s Statement of Material Facts at ¶ 4 *and see* Roark Aff. at ¶ 3). Pursuant to the terms of that program, "certain accommodations were made with regard to the fees and interest owed on the Account; however, the program required [Plaintiff] to continue making payments on the Account on the usual payment schedule." (Def.'s Statement of Material Facts at ¶ 4; Roark Aff. at ¶ 3). In a December 23, 2009 letter addressed to the Plaintiff and signed by Defendant's "Collections Operations" Department, Barclays indicated that the following changes would be made to Plaintiff's credit card account during the term of the program: (1) Plaintiff's Annual Percentage Rate (APR) for all balances would be lowered to 5.9 percent; (2) Plaintiff's Minimum Monthly Payment would be $37.00 for each billing cycle; and (3) any late payment fees incurred during the program would be waived. (*See* Roark Aff. at ¶ 3, Ex. B). The letter further indicated that the Plaintiff would continue to "enjoy these . . . terms for 12 months as long as [he] ma[de] the Minimum Monthly Payment for each billing cycle[,]" and warned that the program would "end earlier if [he] fail[ed] to make two consecutive monthly payments or three non-

2

consecutive monthly payments." (*Id*.). As a condition of participating in the hardship repayment program, Plaintiff agreed to closure of the Account. (*See* Def.'s Statement of Material Facts at ¶ 4 and see Roark Aff. at ¶ 3). Furthermore, pursuant to the terms outlined in the December 23, 2009 letter, Plaintiff "remain[ed] responsible for paying the outstanding balance, interest, fees and other charges." (Roark Aff. at ¶ 3, Ex. B).

According to the Defendant, following placement of the Account into the hardship repayment program, "Mr. Grossman's payment history became even more irregular, and despite receiving monthly statements in late December 2009 and late January 2010, Mr. Grossman failed to make a single payment on the Account during that period." (Def.'s Statement of Material Facts at ¶ 5; Roark Aff. at ¶ 4, Ex. C). After having not received any payments during this period, Barclays sent several letters to Plaintiff as a reminder of his payment obligations under the program. (*See* Def.'s Statement of Material Facts at ¶ 6 *and see* Roark Aff. at ¶ 5). In a letter dated January 7, 2010, Barclays wrote: "We haven't received the minimum payment due on your . . . Credit Card account. Perhaps this is just an oversight, but please note that your payment of $42.07 is due immediately." (Roark Aff. at ¶ 5, Ex. D). In a subsequent letter dated January 26, 2010, Barclays reiterated that it had not received Plaintiff's last required payment by the payment due date. Barclays also warned Plaintiff that his failure to make the next scheduled payment would result in his removal from the hardship repayment program. (*Id*.). After Plaintiff continued to fail to make his scheduled payments, Barclays removed the Account from the program. (*See* Def.'s Statement of Material Facts at ¶ 6 *and see* Roark Aff. at ¶ 6). Barclays advised Mr. Grossman of the Account's removal by letter dated February 24, 2010. (*See* Roark Aff. at ¶ 6, Ex. E). According to the Defendant, "[a]t this point Mr. Grossman was still required to fulfill all of his financial obligations on the Account." (Def.'s Statement of Material Facts at ¶ 7; Roark Aff. at ¶ 6). While the Defendant continued to send regular

monthly statements to the Plaintiff between late January 2010 and late April 2010, Plaintiff failed to make any payment on the Account during that time period. (*See* Def.'s Statement of Material Facts at ¶ 7 *and see* Roark Aff. at ¶ 7).

On March 5, 2010, Defendant sent Plaintiff an "Offer for Final Settlement of Account" which provided for a twenty-five percent reduction in the past due account balance. (Pl.'s Opp. Br. at 3, Ex. C). In the letter, Barclays indicated that it had "made several attempts to contact [Plaintiff] regarding the delinquency of . . . the account." (*Id*.). The letter also included stock language stating that a completed settlement of the account: "SAVES YOU MONEY – Stops late fees and additional interest charges. GIVES YOU PEACE OF MIND – Stops all collection activities on this account. HELPS REPAIR CREDIT – Past due reporting on this account will cease." (*Id*.).

Two months later, on May 21, 2010, Defendant agreed to a settlement of the Account with Plaintiff for "less than the full balance owed at that time."[1] (Def.'s Statement of Material Facts at ¶ 8; Roark Aff. at ¶ 8). The settlement agreement required Plaintiff to make four payments, the last of which was due no later than August 2010. According to the Defendant, "the settlement terms also provided that any future reporting of the Account as past due would cease (although any prior past due status of the Account would not change)." (Def.'s Statement of Material Facts at ¶ 10; Roark Aff. at ¶ 9). At the time the settlement agreement was entered into, "certain amounts owed on the Account were more than sixty (60) days past due while other amounts owed on the Account were more than one hundred twenty (120) days past due." (*Id*.; *see also* Certification of Debra M. Albanese ("Albanese Cert.") at ¶ 2, Ex. A).

---

[1] According to the Defendant, "[a]s a general matter, once an account is settled for less that the full amount owed, any future reporting about the past due status of amounts owed on the account ceases. However, the past payment history of the account is unaffected by such a settlement." (Def.'s Statement of Material Facts at ¶ 8 n.1; Roark Aff. at ¶ 8). The Defendant further explains that "if there is a past delinquency in the payment history for [an] account, that delinquency will continue to appear in that account's history, regardless of the fact that the account has been settled. (*Id*.).

After entering into the settlement with Barclays, Plaintiff made the four agreed-upon payments as follows: (1) $14.00 on May 21, 2010; (2) $77.20 on June 8, 2010; (3) $91.00 on July 7, 2010; and (4) $730.00 on August 19, 2010. (*See* Roark Aff. at ¶ 10, Ex. G). On September 2, 2010, Barclays sent Mr. Grossman a letter confirming that the agree-upon settlement amount had been paid in full. In that letter, Barclay's Collections Operations Department wrote: "As we agreed, your . . . Credit Card account is now closed and you have no further obligations to us. . . . Our records show that your . . . Credit Card account is 'settled.' We've reported this Information to the consumer credit-reporting agencies so they can update this information on your credit report." (*Id*. at ¶ 11, Ex. H). As a result of the settlement, Barclays also sent a Form 1099-C Cancellation of Debt to Mr. Grossman in January 2011 which indicated that $1,124.51 in debt had been discharged. (*See* Roark Aff. at ¶ 12, Ex. I).

After receiving Plaintiff's last settlement payment in August 2010, Barclays provided updated information on Plaintiff's Account to Equifax, Experian and Trans Union, the three credit reporting agencies. (*See* Def.'s Statement of Material Facts at ¶ 13 *and see* Affidavit of Lorianna Schweizer ("Schweizer Aff.") at ¶ 9). Prior to communicating the information to the agencies, Barclays consulted the Credit Reporting Resource Guide ("CRRG") published by the Consumer Data Industry Association[2] ("CDIA") to determine how the information should be reported. (*See* Def.'s Statement of Material Facts at ¶ 14 *and see* Schweizer Aff. at ¶¶ 4, 9). According to the Defendant, "when an account is settled for less than the full amount owed," the CRRG requires a furnisher to report the following information: (1) the dollar amount of the scheduled monthly payment due for the reporting period; (2) the account status code which identifies the status of the

---

[2] The CDIA is "an international trade association that represents the consumer credit, mortgage reporting, employment and tenant screening, and collection services industries." (Def.'s Statement of Material Facts at ¶ 14 n.2; Schweizer Aff. at ¶ 4). According to the Defendant, "[o]ne of the stated function of the CDIA is the establishment of standards for the consumer credit reporting industry. (*Id*.). Those standards are set forth in the CRRG. (*Id*.).

5

account within the activity period being reported; (3) a special comment providing additional information about the account; and (4) the current balance and amount past due on the account as of the date of transmittal. (*See* Def.'s Statement of Material Facts at ¶ 15 *and see* Schweizer Aff. at ¶ 5). Upon receipt of this information from Barclays, each credit reporting agency "inserts the information into its own proprietary consumer credit report format[]" over which Barclays lacks any input or control. (Def.'s Statement of Material Facts at ¶ 18; Schweizer Aff. at ¶ 3).

After reviewing the requirements of the CRRG, Barclays provided updated information concerning Plaintiff's Account to the three credit reporting agencies. Specifically, Barclays updated Plaintiff's Account to reflect "a scheduled monthly payment amount of zero; the account status being a paid or closed account with a zero balance; a payment rating showing that [Plaintiff's] Account had certain amounts which remained historically past the due date as of the date of the payment in full of the settlement; the special comment . . . that [Plaintiff's] Account was paid in full for less than the full balance owed; and that the current balance and amount past due on the Account were zero." (Def.'s Statement of Material Facts at ¶ 19; Schweizer Aff. at ¶ 9). The information was communicated to the three reporting agencies "through a single electronic communication in the standard format deemed acceptable by all three reporting agencies." (Def.'s Statement of Material Facts at ¶ 20; Schweizer Aff. at ¶ 9).

On June 25, 2012, almost two years after making his final settlement payment, Plaintiff sent a letter to Equifax stating that he had "reviewed [his] credit file and . . . wish[ed] to dispute the information in [his] report." (Def.'s Statement of Material Facts at ¶ 21; Albanese Cert. at ¶ 4, Ex. C). Specifically, Plaintiff contended that there were "multiple inaccuracies in . . . [eight] accounts" and expressed his desire "to have them verified or removed from [his] report immediately." (*Id*.). One of the accounts disputed by the Plaintiff was the Barclays Account. That same day, Plaintiff

6

submitted an online dispute with Trans Union requesting that the "negative information" be removed from his credit file.[3] (*See* Def.'s Statement of Material Facts at ¶ 23 *and see* Albanese Cert. at ¶ 3, Ex. B, ¶ 8, Ex. G). Three days later, on June 28, 2012, Plaintiff sent a similar letter requesting removal of allegedly inaccurate information from his credit file to Experian. (*See* Def.'s Statement of Material Facts at ¶ 22 *and see* Albanese Cert. at ¶ 5, Ex. D).

In July 2012, Barclays received electronic requests for verification of information regarding Plaintiff's Account from Equifax, Experian and Trans Union. (*See* Schweizer Aff. at ¶ 10). After receiving these requests, Barclays reviewed the Account's trade line as reported by the reporting agencies and compared the information with Barclay's internal records for the Account. (*See id.*). The Defendant contends that its review confirmed that the information regarding the Account was being reported correctly. Accordingly, Barclays advised the three credit reporting agencies that its reporting had been accurate. (*Id.*). On July 19, 2012, Plaintiff received a response from Equifax indicating that Barclays had verified the Account information. (*See* Def.'s Statement of Material Facts at ¶ 24 *and see* Albanese Cert. at ¶ 3, Ex. B).[4] He received an "updated" credit file from Trans Union on July 21, 2012. (*Id.*).

On August 14, 2012, Plaintiff sent another letter to Experian stating "[o]n June 28 I sent you a letter requesting that you remove the negative information from the following accounts from my report. The information is not accurate information. I have applied for credit and was denied because of this false information that you are reporting. You did not comply with my first request. Please remove this inaccurate negative information and supply me with a copy of my corrected credit report

---

[3] In his response to the Defendant's First Set of Interrogatories, Plaintiff stated that his credit file from Trans Union inaccurately reflected that his Barclays Account was a "chargeoff." (*See* Albanese Cert. at ¶ 3, Ex. B). Plaintiff fails to produce any evidence to suggest that he informed Trans Union of this alleged inaccuracy when he submitted his initial dispute.

[4] A copy of the Plaintiff's credit file dated July 19, 2012 lists the information for Plaintiff's Barclays Account as follows: "Status – Over 120 Days Past Due; Type of Account – Revolving; Type of Loan – Credit Card; Whose Account – Individual Account; ADDITIONAL INFORMATION – Closed or Paid Account/Zero Balance; Account Paid For Less Than Full Balance; Credit Card[.]" (ECF No. 24).

within 30 days." (Def.'s Statement of Material Facts at ¶ 25; Albanese Cert. at ¶ 6, Ex. E). Plaintiff sent a similar letter to Equifax the same day. (*See* Def.'s Statement of Material Facts at ¶ 26 *and see* Albanese Cert. at ¶ 7, Ex. F).

Three days later, on August 17, 2012, Plaintiff sent a letter directly to Barclays disputing how it had reported his Account information to the credit reporting agencies. (*See* Def.'s Statement of Material Facts at ¶ 28; Roark Aff. at ¶ 13, Ex. J; Albanese Cert. at ¶ 9, Ex. H). In that letter, Plaintiff wrote:

> I recently reviewed my credit report and I found multiple inaccuracies in your reporting. . . . You are reporting false negative information about me to the credit bureaus. I dispute the information that you are reporting about me. You are causing me harm and if you do not remove this account from my credit report I will have no choice but to sue you in court. I sent a dispute letter to the credit bureaus and they all verified the information with you during their investigation. I found some discrepancies in the reporting to the 3 different bureaus, all of which were confirmed by you!!!! It is hard to believe that any investigation was done. I request that you provide me with the documentation that you have for this account. (*Id.*).

In response to Plaintiff's allegations, Barclays conducted an "internal review" of how the Account information was being reported to the credit reporting agencies. (*See* Def.'s Statement of Material Facts at ¶ 29 *and see* Schweizer Aff. at ¶ 11). According to the Defendant, this review confirmed that Barclays had accurately reported the information. After receiving Mr. Grossman's letter and conducting the internal review, Barclays requested that all three credit reporting agencies include a comment on Plaintiff's trade line "noting the Account as being in dispute[.]" (Def.'s Statement of Material Facts at ¶ 30; Schweizer Aff. at ¶ 11). Plaintiff received a letter from Barclays confirming the information in his credit report as accurate on September 11, 2012. (*See* Albanese Cert. at ¶ 3, Ex. B). According to the Plaintiff, a comparison of his Trans Union credit report from both before and after Barclays' reinvestigation revealed that two corrections to the report were made. (Pl.'s Br. in Opp. To Def.'s Mot. for Summ. J. ("Pl.'s Opp. Br.") at 2). Specifically, (1) the "account

was previously reported incorrectly as having been a charge off – which it never was, and (2) the date that the account will stay on the report changed from July 2017 to December 2016." (*Id*. at 2 n.1). Plaintiff contends that the latter change resulted from Barclay's having "previously reported the incorrect date from when the delinquency started[.]" (*Id*.).

On September 25, 2012, Plaintiff filed a civil action for damages against Barclays in the Superior Court of New Jersey, Law Division, Special Civil Part, Small Claims Section, Ocean County alleging that Barclays violated certain provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* In his Complaint, Plaintiff alleges that Defendant "furnished information . . . on [his] credit file at the [three] credit reporting agencies." (Compl. at ¶ 1). According to the Plaintiff, after having reviewed his credit file, he "found inaccuracies in the reporting[.]" (*Id*. at ¶ 2). Specifically, according to the Plaintiff, his "account is reported as currently being 120 days past due, even though it had been paid and closed in 2010." (*Id*. at ¶ 3). The Plaintiff further contends that the Defendant "'verified' [the incorrect information] to the bureaus and kept this inaccurate reporting on [his] credit file." (*Id*. at ¶ 4). [5] As a result of Defendant's allegedly inaccurate reporting, Plaintiff's "FICO score has been lowered and [he has] been restrained from obtaining credit which [he] desperately needs to expand [his] business." (*Id*. at ¶ 5). Furthermore, Plaintiff contends in his Complaint that Defendant's "wrongful conduct" has caused him harm including the "denial of credit, which [has] caused missed opportunities in business, and extreme stress." (*Id*. at ¶ 6).[6] Accordingly, Plaintiff seeks statutory damages in the amount of $3,000.00, actual damages, and equitable relief removing

---

[5] In his response to the Defendant's First Set of Interrogatories, Plaintiff clarified what "misinformation" he believes was communicated by Barclays. He states: "Barclays reported the current pay status as 60 days . . . and 120 days past due. This is incorrect because after the settlement was made, [four] payments were paid on time, and the status at the time of the last activity was not late at all[.]" (Albanese Cert. at ¶ 3, Ex. B).

[6] In his response to the Defendant's First Set of Interrogatories, Plaintiff stated that he "could not get financing for machines that [he] needed for [his] business." (*Id*.). According to the Plaintiff, in June 2011, he applied for credit with one of the suppliers of his vending machine business, Vistar, and was denied based on his credit report. In November 2011 he applied for financing in the amount of $5,000.00 from a company named Firestone Financial and was similarly denied. In addition, Plaintiff claims that his applications for Chase and American Express credit cards were declined as well as his November 2012 application for a car loan from Pentagon Federal. (*Id*.).

"the reporting of [his Barclays] account . . . from [his] credit file." (*Id.* at ¶ 7). The Complaint was formally served upon the Defendant on October 1, 2012. (Def.'s Notice of Removal at ¶ 2).

On October 4, 2012, Defendant filed a timely Notice of Removal to remove this action to the United States District Court for the District of New Jersey. On May 23, 2013, Defendant filed the instant Motion for Summary Judgment. The Defendant argues that "its conduct relating to the Account fully complied with the FCRA and that all reporting done about the Account has been in accordance with the directives of the CRRG." (Def.'s Mem. in Supp. of Mot. for Summ. J ("Def.'s Br.") at 12). Accordingly, Defendant argues that because "there is *no dispute* that all of the information communicated by Barclays regarding Mr. Grossman's account was accurate[,]" and because "no genuine issue as to any material fact in this case [exists]," the entry of summary judgment is appropriate.

On June 3, 2013, Plaintiff filed his Opposition to Defendant's Motion for Summary Judgment. In opposition, Plaintiff argues that the "information being reported by Barclays that the account is 60 days past due was incorrect at the time of the reinvestigation." (Pl.'s Opp. Br. at 4). Accordingly, he argues that the account was not past due in 2012 and, therefore, the "status [of the account] should have been modified, deleted or permanently blocked[.]" (*Id.*). Plaintiff contends that Defendant's Motion for Summary Judgment should be denied "based on the agreed upon facts, that there was a settlement agreement that [he] kept . . . and based upon the FCRA law requiring Barclays to update the current information, with which Barclays refuses to comply[.]" (*Id.*). Defendant filed its reply on June 10, 2013. Plaintiff filed a sur-reply on June 18, 2013.[7]

---

[7] Sur-reply briefs are not permitted under the District of New Jersey's Local Civil Rules. *See* L. Civ. R. 7.1(d)(6). In order to file a sur-reply, a party must first obtain leave of court. In the absence of the court's permission, the court need not consider the party's supplemental submission and may strike it from the record. Here, the Court recognizes that Plaintiff is a *pro se* litigant who may be unfamiliar with this Court's motion practice. This Court has previously recognized that a *pro se* party's submissions should be afforded a more liberal reading and interpretation. *See Hibbert v. Bellmawr Park Mut. Housing Corp.*, 937 F. Supp. 2d 565, 570-71 (D.N.J. Mar. 28, 2013). Accordingly, the Court will consider Plaintiff's June 18, 2013 submission in rendering this decision.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id*. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). To do so, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alveras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007). "[P]*ro se* plaintiffs are not relieved of the obligation to set forth facts sufficient to survive summary judgment." *Jacobs v. Cumberland County Dept. of Corrections*, No. 09-0133, 2010 U.S. Dist. LEXIS 130007, 2010 WL 5141717, at *3 (D.N.J. Dec. 8, 2010).

## B.   The Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA" or "the Act") "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (internal citations omitted). In drafting the statute, Congress sought "'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 247 (3d Cir. 2012) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)). In general terms, the FCRA imposes duties on two types of entities: credit reporting agencies and "furnishers of information." *See Cosmas v. Am. Express Centurion Bank*, 2010 U.S. Dist. LEXIS 58780, at *21 (D.N.J. June 14, 2010). While not specifically defined in the FCRA, a furnisher of information "is understood to include any entity that

reports information relevant to a consumer's credit rating – i.e., payment history, amount of debt, and credit limit – to credit reporting agencies." *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 446 (D.N.J. 2010). Here, the parties do not dispute that Defendant is a "furnisher of information" within the meaning of the statute.

Although Plaintiff does not specify in his Complaint which subsection of the FCRA he relies on in making his allegations, it appears as though his claim is rooted in § 1681s-2 of the Act which governs the reporting of credit information that is false or inaccurate.[8] That section delineates the responsibilities of furnishers of information to the credit reporting agencies. Subsection (a) of § 1681s-2 imposes a duty on furnishers to provide accurate information to the credit reporting agencies, while Subsection (b) explains the duties of a furnisher once it is placed on notice of a dispute regarding information it has previously provided to a credit reporting agency. *See Burrell*, 753 F. Supp. 2d at 447. To be thorough in its analysis, the Court assumes Plaintiff intended to assert claims under both subsections and will address each in turn.

### 1. Plaintiff's Claims Under 15 U.S.C. § 1681s-2(a)

Subsection (a) provides that: "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). The term "reasonable cause to believe that the information is inaccurate" is defined in the statute as "having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable consumer to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D). The Third Circuit has expressly recognized that no private right of action exists under § 1681s-2(a). *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) (internal citations omitted);

---

[8] In his Opposition to Defendant's Motion for Summary Judgment, Plaintiff clarified that 15 U.S.C. § 1681s-2(b) provides a "basis for [his] complaint[.]" (Pl. Opp. Br. at 3). He later explicitly states that "[his] allegation is a violation of Subjection (b)." (*Id*. at 9).

13

*SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011); *see also Fallas v. Cavalry SPV I, LLC*, 2013 U.S. Dist. LEXIS 60380, at *24 (D.N.J. Apr. 29, 2013) (explaining that "Congress limited the enforcement of [Section 1681s-2(a)] exclusively to government entities identified in other portions of the [A]ct and did not create a private cause of action to enforce that section."). Here, although Plaintiff's Complaint fails to specifically state which section of the FCRA Barclays allegedly violated in its reporting of Plaintiff's information to the credit reporting agencies, Plaintiff did provide a copy of the language of Subsection (a) in his discovery responses. (*See* Albanese Cert. at ¶ 3, Ex. B). Barclays cannot be liable to Mr. Grossman under Subsection (a) as a matter of law because "only the Government can pursue such claims against consumer reporting agencies." *Slimm v. Bank of Am. Corp.*, 2013 U.S. Dist. LEXIS 62849, at *27 (D.N.J. May 2, 2013). The Plaintiff concedes as much when he acknowledges in his Opposition that "[t]here is no private cause of action under [15 U.S.C. 1681s-2(a)]." (Pl.'s Opp. Br. at 8). Barclays is a private entity that bears only a casual financial institution relationship to the Governement. Accordingly, to the extent that Plaintiff's claim is based upon an alleged violation of § 1681s-2(a), his claim fails as a matter of law and the entry of summary judgment in favor of the Defendant is appropriate.

    **2. Plaintiff's Claims Under 15 U.S.C. § 1681s-2(b)**

The only provision of the FCRA that an individual consumer can enforce against his or her creditor is found in § 1681s-2(b). *See Cosmas*, 2010 U.S. Dist. LEXIS 58780 at *7 (stating that "[p]rivate rights of action are permitted for claims brought under section 1681s-2(b) where the furnisher has received notice of a dispute from a credit collection agency."). As this Court has recognized, "whereas § 1681s-2(a) purports to require furnishers of information to ensure the accuracy of . . . information before transmitting it to a credit reporting agency, § 1681s-2(b) requires

14

that furnishers take certain steps to investigate and correct inaccurate information they have already relayed to the credit rating agencies." *Burrell*, 753 F. Supp. 2d at 447.

§ 1681s-2(b) is triggered when a furnisher of information "receiv[es] notice . . . of a dispute with regard to the completeness or accuracy of any information provided by [the furnisher] to a consumer reporting agency . . . ." 15 U.S.C. § 1681s-2(b)(1). Once notice is received by the furnisher of information, the furnisher is required to take several steps to resolve the dispute. *See Campbell v. Chase Manhattan Bank, USA. N.A.*, 2005 U.S. Dist. LEXIS 16402, at *46-47 (D.N.J. June 24, 2005). First, the furnisher must "conduct an investigation with respect to the disputed information[.]" 15 U.S.C. § 1681s-2(b)(1)(A). Second, the furnisher must "review all relevant information provided by the consumer reporting agency . . . [.]" *Id.* at § 1681s-2(b)(1)(B). Third, the furnisher must "report the result of the investigation to the consumer reporting agency[.]" *Id.* at § 1681s-2(b)(1)(C). Fourth, if the furnisher concludes that the "information is incomplete or inaccurate," it must report that conclusion to all consumer reporting agencies to which the furnisher supplied the erroneous information. *See id.* at § 1681s-2(b)(1)(D). Finally, "if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . , for purposes of reporting to a consumer reporting agency only," the furnisher of information must: "(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." 15 U.S.C. 1681s-2(b)(1)(E).

In order to establish a violation of § 1681s-2(b), a plaintiff must plead that "'(1) [he] sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information.'" *Martinez v. Granite State Mgmt. & Res.*, 2008 U.S. Dist. LEXIS 94995, at *6 (D.N.J. Nov. 20, 2008) (quoting *Ruff v. America's Servicing Co.*, 2008 U.S.

15

Dist. LEXIS 33447, at *4 (W.D. Pa. Apr. 23, 2009)). After reviewing the evidence in the light most favorable to the Plaintiff, the Court finds that Plaintiff has satisfied the first two procedural requirements for bringing a § 1681s-2(b) claim. The record indicates that Plaintiff sent notice of the disputed information to Equifax, Experian and Trans Union on June 25 and June 28, 2012. The reporting agencies, in turn, then notified Barclays of the disputed information in July 2012. (*See* Schweizer Aff. at ¶ 10). In order to succeed on his § 1681s-2(b) claim, therefore, Plaintiff must demonstrate that Barclays failed to conduct a reasonable investigation and correct any inaccurate information that it may have uncovered through its investigation. *See Cosmas*, 2010 U.S. Dist. LEXIS 58780 at *33.

The Third Circuit has stated that "[i]t is only when the furnisher fails to undertake a reasonable investigation following . . . notice [from a credit reporting agency] that it may become liable to a private litigant under § 1681s-2(b)." *SimmsParris*, 652 F.2d at 359. While the Third Circuit has not directly defined the extent of investigation required by § 1681s-2(b)(1)(A), other courts have also held that § 1681s-2(b) requires a reasonable investigation. *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (stating that "§ 1681s-2(b) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified."); *see also Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 609 n.9 (E.D. Pa 2008) (explaining that "[l]iability pursuant to [§ 1681s-2(b)] occurs as a result of an unreasonable investigation, not simply as a result of inaccurate information being reported."). This Court has also previously recognized that the "standard under which furnishers are judged is one of reasonableness." *Cosmas*, 2010 U.S. Dist. LEXIS 58780 at *32.

In determining whether an investigation is reasonable, courts have balanced the burden on the furnisher against the danger of reporting inaccurate information. *See, e.g.*, *Johnson*, 357 F.3d at 432 (endorsing "the general balancing test . . . weighing the cost of verifying disputed information against the possible harm to the consumer[.]"). While the question as to "[w]hether a defendant's investigation is reasonable is a factual question normally reserved for trial[,] . . . summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (citing *Crabhill v. Trans Union L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2011)); *see also Seamans v. Temple Univ.*, 901 F. Supp. 2d 584, 596 (E.D. Pa 2012) (stating that "summary judgment is warranted where the reasonableness or unreasonableness of the procedure is beyond question.") (internal quotations omitted); *and see Farren v. RJM Acquisition Funding, LLC*, 2005 U.S. Dist. LEXIS 15230, at *13 (E.D. Pa. July 29, 2005).

The determination as to whether a reinvestigation conducted by a furnisher in response to a consumer's notice of dispute is reasonable "depends in large part on the allegations made by the consumer and the notice of the allegations provided to the furnisher by the consumer reporting agency." *Krajewski*, 557 F. Supp. 2d at 610. In the absence of allegations of fraud, identity theft, "or other issues not identifiable from the face of its records, the furnisher need not do more that verify that the reported information is consistent with the information in its records." *Id.* at 609 (citing *Westra*, 409 F.3d at 827). Furthermore, § 1681s-2(b) "does not require . . . any data furnisher to take extraordinary means to investigate and *discover* disputed information but rather calls for a more passive investigation where the data furnisher is determining only that the information provided to it matches the information in its records." *Farren*, 2005 U.S. Dist. LEXIS 15230 at *20-21 (emphasis in original).

In his initial letters to both Equifax and Experian, Plaintiff indicated only that there were "multiple inaccuracies in . . . [eight] accounts" and that he desired "to have them verified or removed from [his] report immediately." (Albanese Cert. at ¶¶ 4-5, Exs. C, D). In his online dispute submitted with Trans Union, Plaintiff similarly requested that the "negative information" be removed from his credit file. (*See* Def.'s Statement of Material Facts at ¶ 23 *and see* Albanese Cert. at ¶ 3, Ex. B, ¶ 8, Ex. G). Notably, Plaintiff's initial communications failed to specifically identify what information he believed had been inaccurately reported by Barclays (or the other six creditors of the seven additional accounts he was contesting for that matter). Plaintiff's dispute did not involve allegations of fraud, identity theft, or any other complaint external to the record, and so the scope of Barclay's inquiry was properly limited to the record itself. *See Seamans*, 901 F. Supp. 2d at 597 *and see Westra*, 409 F.3d at 827. Here, the record indicates that in responding to Plaintiff's dispute, Barclay's reviewed its internal records regarding the history of the Account, determined that the information being reported by the credit reporting agencies was accurate, and provided verification to the credit reporting agencies that the Account information was correct. (*See* Schweizer Aff. at ¶ 10). In the opinion of this court, such a response satisfied Barclay's investigatory and reporting obligations under Subsection (b). After reviewing all of the evidence in the light most favorable to the Plaintiff, the Court finds that the investigatory procedures implemented by the Defendant beyond question satisfied the requirements imposed on a furnisher under § 1681s-2(b), and thus, are reasonable as a matter of law. In the view of this Court, Plaintiff has failed to present sufficient evidence from which a reasonable jury could rationally find that Barclay's reinvestigation of the Account was unreasonable. The Defendant correctly points out that Plaintiff's "argument that Barclays violated the FCRA is based on what he thinks 'should' occur upon a furnisher's receipt of a consumer dispute from a credit reporting agency, without any substantiation from competent

evidentiary materials or controlling case law." (Pl.'s Reply Br. at 4-5). In addition, Plaintiff assumes that just because Defendant's investigation confirmed the accuracy of the information it had previously provided, that Barclays did not conduct any investigation at all. The record indicates otherwise.

Moreover, while the Third Circuit has not defined accuracy in the context of a furnisher's obligations under § 1681s-2(b), it has elaborated on the standard for "accuracy" in the context of a credit reporting agency's obligations under § 1681e(b) and § 1681i. The Court has explained that "[a] report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect." *Schweitzer v. Equifax Info. Solutions LLC*, 441 Fed. Appx. 896, 902 (3d Cir. 2011) (quoting *Dalton v. Capital Assoc. Indus. Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)). Here, the Plaintiff repeatedly makes the unsupported allegation that "the current status on the report . . . is inaccurate [and] has not been corrected after the reinvestigation." (Pl.'s Opp. Br at 10). The Court finds that Barclay's reporting of Plaintiff's account, which was done pursuant to CRRG guidelines, was not patently incorrect or misleading. In fact, Plaintiff even agrees that when he accepted the settlement of the Account with Barclays, certain amounts were more than sixty days past due while others were more than one hundred twenty days past due. Accordingly, to the extent that Plaintiff's claim is based upon an alleged violation of § 1681s-2(b), his claim fails as a matter of law and the entry of summary judgment in favor of the Defendant is appropriate.

### 3. Plaintiff's Common Law Claims

To the extent that Plaintiff's claims are based on state law causes of action, the entry of summary judgment is appropriate because those claims are preempted by the FCRA. The FCRA specifically states that § 1681s-2 preempts any state law claims relating to furnishers of information

19

to credit reporting agencies. *See* 15 U.S.C. § 1681t(b)(1)(F). § 1681t(b)(1)(F) provides, in relevant part: "No requirement or prohibition may be imposed under the laws of any State - with respect to any subject matter regulated under Section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Id.* This statute was created "to eliminate state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Campbell*, 2005 U.S. Dist. LEXIS 16402 at *51 (internal citations omitted). Therefore, to the extent that Plaintiff's claims are based on state law causes of action involving the false reporting of negative credit activity, the entry of summary judgment is appropriate.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 15) is granted in its entirety. An appropriate Order follows.

<em>s/Peter G. Sheridan</em><br>PETER G. SHERIDAN, U.S.D.J.

February 18, 2014